IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| PRENTICE DAVID WILIS, | * | |
| Plaintiff, | * | |
| v. | * | CV 321-049 |
| CLARENCE MITCHELL; RILEY WINDHAM; WILLIAM PITTMAN; and LARRY DEAN, | * | |
| Defendants. | * | |

O R D E R

Presently before the Court is Defendants' motion for summary judgment as to Plaintiff Prentice David Wilis's claims arising out of an incident that occurred between him and the Officer Defendants at the Laurens County Sheriff's Office on March 25, 2019. Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983.

Defendants filed the motion for summary judgment on May 12, 2022, contending the no genuine dispute of material fact exists as to the essential elements of any of Plaintiff's claims against Defendants. Defendant Clarence Mitchell also filed a separate motion to dismiss based upon insufficient service of process. The Clerk gave Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc.

No. 19.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

Plaintiff has responded to the motion for summary judgment, filing his deposition testimony in support of his claims. Defendants have filed reply briefs. The motions are now ripe for consideration.

## I. BACKGROUND

At approximately 1:00 a.m. on March 25, 2019, Plaintiff was arrested for battery from his place of employment and was placed in the holding cell of the Laruen County Sheriff's Office awaiting booking. (Defs.' St. of Material Facts, Doc. No. 18-10, ¶ 1.)[1] Plaintiff became impatient and began beating and kicking on the door of the holding cell. (Id. ¶ 2.) In fact, Plaintiff testified that he began beating and kicking on the door about ten minutes after being placed in the cell "because I didn't want to be locked up, [and] I wanted to know what was going on." (Pl.'s Dep., Doc. No. 22-2, at 81; at 82 ("As they put me in, I wanted to get the answers then.").) Upon hearing the beating and kicking on the door of the holding cell, Defendant Officer Clarence Mitchell went to see who was causing the disruption. (Defs.' St. of Material

---

[1] Unless otherwise noted, Plaintiff has admitted to Defendants' Statement of Material Facts.

2

Facts ¶ 3.) Plaintiff asked Officer Mitchell when he would get booked in, and Officer Mitchell told Plaintiff that he could not get booked in until head count was complete. (Id. ¶ 5.)

Later, Plaintiff began beating on the door again. (Id. ¶ 6.) Officer Mitchell approached him for a second time, and after Plaintiff expressed anger and frustration, Officer Mitchell told Plaintiff that the booking officer was on a break and would get to him when she was able. (Id. ¶ 7.) Soon after, Plaintiff began beating and kicking on the door again. (Id. ¶ 8.) Officer Mitchell approached Plaintiff a third time and told Plaintiff that if he did not stop beating, Plaintiff would have to go into a wrap.[2] (Id. 9.) Plaintiff does not admit to this chronology of events. Rather, he testified that upon the second time that Officer Mitchell returned to his beating and kicking on the door, he brought two other officers, Defendant Officer William Pittman and Defendant Officer Riley Windham. At that time, Officer Mitchell immediately came into the holding cell and slammed Plaintiff to

---

[2] A wrap is used to restrain an individual to keep him from hurting himself or others. (Defs.' St. of Material Fact ¶ 10.) While in the wrap, the individual is able to move his arms but not to the extent of harming someone else. (Id. ¶ 11.) The individual's legs are restrained while in the wrap. (Id. ¶ 12.) The individual's ability to talk or move his head or neck is not affected while restrained in the wrap. (Id. ¶ 13.)

the ground. (Pl.'s Dep. at 55 (relating what he wrote in a follow-up statement[3] dated March 27, 2019).)

According to the officers, when they opened the door to the holding cell (whether it was the second or third time is immaterial), Plaintiff pulled his pants up and got into a fighting stance. (Mitchell Dep., Doc. No. 18-3, at 16; Pittman Dep., Doc. No. 18-4, at 29; Windham Dep., Doc. No. 18-5, at 23.) Officer Windham described Plaintiff, who was within "arm reach," with a "look of aggression" on his face. (Windham Dep. at 23.) Officer Pittman testified that as soon as Plaintiff got into this fighting stance, Officer Mitchell grabbed Plaintiff and took him to the ground in a controlled fall. (Pittman Dep. at 30-31.) Plaintiff denies that he was in a "fighting stance," but he admits that he had an angry face. (Pl.'s Dep. at 88 ("It was probably, like mad, like, mad, like angry a little bit."); Id. at 91 (again, reading from his written statement, "maybe the expression on my face was why I was attacked").)

Once Plaintiff was restrained on the ground, Officers Pittman and Windham assisted Officer Mitchell in handcuffing Plaintiff and placing him in the wrap for his safety.[4] (Defs.' St. of Material

---

[3] The handwritten follow-up statement is attached to Plaintiff's deposition excerpt at Doc. No. 18-2.

[4] In disputing this statement in his response, Plaintiff simply cites to his deposition testimony; however, nothing in Plaintiff's deposition testimony implicates Officers Pittman and Windham in an

4

Fact ¶ 22.) Once the officers got Plaintiff in the wrap, they took him out of the holding cell to the visitation room and handcuffed him to a seat, though Plaintiff characterizes his movement as being thrown or slammed out of the holding cell. (Pl.'s Dep. at 65.) The officers placed mats around Plaintiff so he would not injure himself. (Defs.' St. of Material Fact ¶ 24.)

The officers state that Plaintiff did not complain about an injury or ask for medical attention. (Id. ¶ 25.) Plaintiff, however, states that he did complain about his back that night. (Pl.'s Dep. at 66.) In any event, later that morning, Officer Mitchell told a nurse in the medical department about the incident and requested Plaintiff be examined by medical staff. (Defs.' St. of Material Fact ¶ 26.) Plaintiff was seen and treated by medical staff later that day. (Id. ¶ 27.) There is no medical evidence of record stating what Plaintiff's injuries were. Rather, he only testified that his back was hurt in the incident. He further testified that he needs back surgery, but he could not provide

---

excessive force situation. In fact, Plaintiff states: "[Deputy Mitchell] is the only one that slammed - - all of them handled me, but he was the one that was more aggressive." (Pl.'s Dep. at 62, 64.) Plaintiff continues: "Get my arm and bend them, put them behind my back and everything. And - yeah, they were helping him out. They were very - - they were rough." (Id. at 63.) However, when specifically asked whether either Officer Windham or Officer Pittman slammed Plaintiff to the floor, he testified "no." (Pl.'s Dep. at 64.)

5

evidence from any medical provider or provide any details about the surgery. (Pl.'s Dep. at 69-71.)

Before the end of their shifts, the officers each completed an incident report outside of each other's presence and without discussing the contents of their reports with each other. (Defs.' St. of Material Fact ¶ 28.)

## II.  SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses, which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252; accord Gilliard v.

Ga. Dep't of Corrs., 500 F. App'x 860, 863 (11th Cir. 2012) (per curiam). Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials in its pleadings. Rather, [his] responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). As required, this Court will view the record evidence "in the light most favorable to the [nonmovant]," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will "draw all justifiable inferences in [Plaintiff's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks omitted).

### III. LEGAL ANALYSIS

Section 1983 creates a private right of action for the deprivation of federal rights by persons acting under color of state law.[5] 42 U.S.C. § 1983. In this case, Plaintiff alleges that Defendants violated his constitutional rights by punishing him without due process and physically abusing and injuring him through the use of excessive force. While not naming a specific Defendant, Plaintiff also alleges that his rights were violated

---

[5] Here, there is no dispute that Defendants were at all relevant times acting under color of state law.

when "fellow Defendants" failed to stop the harm and acted together to create incident reports to intentionally cover up the incident.[6] Finally, Plaintiff claims that he was not provided constitutionally adequate care following the incident.[7]

In his Complaint, Plaintiff names the three officers involved in the incident and Defendant Larry Dean, who at the time was the Sheriff of Laurens County. There are no specific allegations against Sheriff Dean. Plaintiff does not state whether he is suing the Defendants in their official or individual capacities.

A.   **Eleventh Amendment Immunity**

Defendants move for summary judgment on any claims asserted against them in their official capacities because the Eleventh Amendment bars § 1983 claims against the state or an agency of the state. To that end, Defendants claim they were acting as an arm of the state in operating the Laurens County Sheriff's Office.

Plaintiff does not respond to Defendants' Eleventh Amendment argument and thus has abandoned his official capacity claims to the extent they existed. Further it is well-settled that a sheriff

---

[6] Defendants have moved for summary judgment on any claim of a civil conspiracy, which Plaintiff has not opposed in any manner. Accordingly, summary judgment is appropriate as Plaintiff has abandoned this claim.

[7] Plaintiff also claims in a single sentence that Defendants' actions were solely in response to protected speech. Plaintiff does not oppose Defendants' motion for summary judgment, and therefore, he has abandoned any First Amendment retaliation claim.

and his deputies act as an arm of the state when operating a county jail. Manders v. Lee, 338 F.3d 1304, 1319 (11th Cir. 2003). Accordingly, Plaintiff's official capacity claims against all Defendants are barred by Eleventh Amendment immunity.

### B. Sheriff Larry Dean

Plaintiff has not alleged any federal claim against Sheriff Dean in his Complaint. Plaintiff does not allege that Sheriff Dean was present at the Laurens County Sheriff's Office during the incident; he does not allege that Sheriff Dean failed to intervene; he does not allege that Sheriff Dean made any medical decisions related to Plaintiff; and he does not allege that Sheriff Dean took part in any alleged conspiracy to cover up the incident or that he participated in any alleged retaliation. The only allegation in the Complaint made against Sheriff Dean is in a state law claim, to wit: "[A]s the Sheriff of Laurens County charged with ensuring policies of the detention center and relevant laws of the State of Georgia are followed," Sheriff Dean caused "spoliation of important evidence of Plaintiff's claims." (Compl., Doc. No. 1-1, ¶ 31.)

To be clear, there has been no argument, motion, or briefing, let alone evidence, that evidence was spoliated in this case. Rather, Plaintiff testified that the Officer Defendants had body cameras and that the video would show the truth of what happened.

(Pl.'s Dep. at 60.) But Plaintiff also testified that he did not know if they were turned on and that he had never seen videotape of the incident. (Id. at 76-77.) Thus, there is no claim of spoliation in the case against Sheriff Dean.

Having asserted no allegations in the Complaint that Sheriff Dean violated federal law in any manner, he is entitled to summary judgment.

### C. Qualified Immunity

The Officer Defendants assert that they are entitled to qualified immunity for Plaintiff's federal claims of excessive force, failure to intervene, and deliberate indifference.

Qualified immunity is a judicially-created affirmative defense under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citations omitted). There is no dispute that the Officer Defendants were performing within the scope of their discretionary authority at

all relevant times. Accordingly, the burden shifts to Plaintiff to demonstrate that qualified immunity is not appropriate. See Lumley, 327 F.3d at 1194.

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014). "The first [prong] asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001) (alterations omitted)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 1866 (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)). "Courts have discretion to decide the order in which to engage these two prongs . . . [b]ut under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Id. (citations omitted). Because Plaintiff cannot establish a constitutional violation as a matter of law, the Court need not address the clearly established prong.

1. Excessive Force

In Kingsley v. Hendrickson, 576 U.S. 389 (2015), the United States Supreme Court clarified that the Eighth Amendment's "malicious-and-sadistic standard" applied to incarcerated

prisoners does not extend to pretrial detainees. Id. at 400-01, as explained in Patel v. Lanier Cnty. Ga., 969 F.3d 1173, 1181 (11th Cir. 2020). Rather, a pretrial detainee's excessive-force claim is governed by a rule of "objective reasonableness." Kingsley, 576 U.S. at 396-97 ("[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.").

Determining whether Officer Mitchell's conduct[8] in taking down Plaintiff upon immediately entering the holding cell was objectively reasonable requires balancing "the nature of the intrusion" on Plaintiff's rights "against the countervailing governmental interests at stake." Graham v. Conner, 490 U.S. 386, 395 (1989). A court must consider the need to manage a jail facility in order "to preserve internal order and discipline and to maintain institutional security.'" Kingsley, 576 U.S. at 397; see also Piazza v. Jefferson Cnty., 923 F.3d 947, 953 (recognizing that maintaining jail security and discipline may require jail

---

[8] As noted in footnote 4, *supra*, there is no evidence that Officers Pittman and Windham exercised excessive force on Plaintiff. In his responsive brief, Plaintiff makes statements such as "Defendants beat Plaintiff" and that Plaintiff "maintained that all three Defendants attacked [him]." (Pl.'s Resp., Doc. No. 22, at 2 & 6.) These broad assertions are simply belied by the deposition testimony of Plaintiff as set forth above. Moreover, and not insignificantly, the only *factual* allegation related to Officers Pittman and Windham in the Complaint is that they "assisted Defendant Mitchell in placing Plaintiff into a wrap instead of ensuring Plaintiff received medical attention regarding his serious injuries." (Compl. ¶ 16.)

officers to use force). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

The Kingsley Court stated that there is no precise test to determine reasonableness in the use of force, but it provided a non-exclusive list of factors that a court may consider:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 576 U.S. at 397.

Based on the totality of circumstances in this case, viewed in the light most favorable to Plaintiff, Officer Mitchell's conduct in taking down Plaintiff upon entering the holding cell did not constitute excessive force. Though Plaintiff complains that it was unnecessary, through his own testimony he admits that he had previously been disruptive and impatient, and upon the second encounter with Officer Mitchell, he had an angry expression that may have caused Officer Mitchell's response. Certainly, Plaintiff has presented no evidence to avoid the conclusion that Officer Mitchell *reasonably perceived* a threat in the holding cell.

13

Given the confines of that cell and the impatient, if not aggressive, nature of Plaintiff's conduct toward the jailors, the response of Officer Mitchell was reasonable, particularly in light of the countervailing interests of maintaining a safe and secure jail facility.

This conclusion is bolstered by the fact that Plaintiff has presented no evidence that he was seriously harmed. Plaintiff claims that he "complain[ed] all of that night." (Pl.'s Dep. at 66.) He states that the Officer Defendants "did try to do a little something . . . [b]ut the next day I went - - they took me to medical again, then they seen how bad my back was messed up. And then I was in a wheelchair." (Id.) He claims his back was bruised and swollen. (Id. at 66-67.) This is the sum total of Plaintiff's evidence that he suffered serious injury from the incident. Yet, there are neither medical records nor corroborating testimony (let alone expert testimony) showing the extent of his injuries. While Plaintiff subsequently testified that he would require back surgery, he has not presented any medical evidence supporting this claim. The noticeable lack of evidence of any serious injury weighs in favor of the Court's finding that Officer Mitchell's conduct was not objectively unreasonable.

Plaintiff also claims that after he was placed in the wrap, the Officer Defendants "slung" him out into the hallway. He uses

14

the words "slammed" and "threw" as well.[9] (Pl.'s Dep. at 65.) Even to the extent that this testimony offers a true account, this scintilla of evidence of a show of force will not carry Plaintiff's constitutional day, particularly where there is no evidence of serious harm.

In short, based upon the undisputed facts, there is nothing to suggest that the physical force used by the Officer Defendants was more than necessary to contain the situation. Plaintiff presented a safety problem to himself and others, the events transpired quickly, and the Officer Defendants had to maintain an orderly facility. No reasonable jury could conclude that the use of force exercised against Plaintiff under these circumstances was objectively unreasonable. Thus, summary judgment is appropriate on any excessive force claim.

2. Failure to Intervene

Plaintiff cursorily claims that "fellow Defendants," presumably Officers Pittman and Windham, failed to intervene when Officer Mitchell took Plaintiff down. While "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance," Crenshaw v. Lister, 556 F.3d

---

[9] Of note, these allegations do not appear in the Complaint or in the handwritten note Plaintiff executed two days later.

1283, 1293-94 (11th Cir. 2009), in this case Plaintiff has failed to establish an underlying unconstitutional use of excessive force. Thus, Plaintiff's failure-to-intervene claim fails as a matter of law.

    3.   Deliberate Indifference to Medical Needs

A prisoner's claim of inadequate medical care does not violate the Eighth Amendment unless the treatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Here, Plaintiff cursorily claims that Defendants did not promptly respond to his complaint of back pain that evening so as to constitute deliberate indifference to his serious medical condition.

To prevail on a deliberate indifference claim, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." See, e.g., Mann v. Taser Int'l, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (cited source omitted).

With respect to the first prong, the objective component, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1307 (quoted source omitted). Again,

16

Plaintiff has presented no evidence that he had an obvious serious medical need. Plaintiff insists that his injury should have been apparent, but there is no evidence that the Officer Defendants examined Plaintiff's back. And other than complaining, Plaintiff did not manifest serious injury. Further, the "fact" that Plaintiff was in a wheelchair when he went to the medical department for examination is immaterial without context.

In order to satisfy the second prong, the subjective component, a plaintiff must show that the prison official subjectively knew of the risk of serious harm to the plaintiff and disregarded that risk with conduct that goes beyond negligence. See, e.g., Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017); Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016); see also Patel, 969 F.3d at 1188 n.10 (conduct must be "reckless," i.e., more than negligent, to meet the Supreme Court's standard for deliberate indifference). Plaintiff puts forth no evidence in this regard. Rather, the evidence shows that Plaintiff was taken to the medical department within a reasonable amount of time, later the day of the incident. Thus, there does not appear to be any deliberate indifference to Plaintiff's complaints.

Finally, Plaintiff cannot satisfy the third prong - causation. Plaintiff has presented no evidence to establish that the delay in going to the medical department for any back injury,

whether it was a few hours or a half day, worsened Plaintiff's medical condition.

In sum, the Court concludes that Plaintiff cannot demonstrate a case of deliberate indifference to a serious medical need as a matter of law, and the Officer Defendants are therefore entitled to summary judgment on this claim.

### IV. CONCLUSION

Upon the foregoing, Defendants' motion for summary judgment as to Plaintiff's federal claims (doc. no. 18) is **GRANTED**. The Court declines to exercise jurisdiction over Plaintiff's state law claims[10]; thus, they are **DISMISSED WITHOUT PREJUDICE**. Defendant Clarence Mitchell's motion to dismiss (doc. no. 17) is **DENIED AS MOOT**. The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of all Defendants and **CLOSE** this case. Costs are taxed against Plaintiff.

**ORDER ENTERED** at Augusta, Georgia, this 6th day of September, 2022.

_____
UNITED STATES DISTRICT JUDGE

---

[10] Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims under which it has original jurisdiction.